KENNEDY, Circuit Judge.
Officer John Brewer, a police officer for the city of Fairview Park, Ohio, appeals the district court’s denial of his motion for summary judgment on the grounds of qualified immunity. Officer Brewer was dispatched to the Hanson home based on information that the male householder was “out of control” and “trashing the [Hanson’s] house.” In the course of investigating what was going on at the Hanson home, Officer Brewer shot Scott Hanson three times, killing him. Scott’s wife, Pamela Hanson, brought this action against Officer Brewer pursuant to 42 U.S.C. § 1983, claiming that defendant violated her husband’s Fourth Amendment right to be free from excessive force. Defendant Brewer sought summary judgment, claiming that on the undisputed facts, he was entitled to qualified immunity for his use of deadly force. The district court held that there were material issues of fact as to what occurred that night and denied the motion for summary judgment. Because we find that the district court, in denying defendant’s motion, properly determined that genuine issues of material fact remained as to the events that led to Scott Hanson’s death, we DISMISS the present appeal for lack of jurisdiction.
BACKGROUND
This ease involves conflicting accounts of an incident that began with defendant Officer Brewer responding to a 911 call and resulted in Officer Brewer shooting and killing the husband of plaintiff Pamela Hanson. Relevant to this appeal are the events that occurred immediately prior to Scott Hanson’s death. At 6:15 on the evening of the shooting, Officer Brewer responded to a radio dispatch stating that there was “a male out of control trashing the house” at Hanson’s address. Upon arriving at the Hansons’ home, Officer Brewer testified that he saw a PT Cruiser “smashed into the house” and that a car had been driven through the garage door. Hearing noise coming from the garage, he walked toward the garage and found Mr. Hanson “walking back and forth like he’s agitated,” and, with two golf clubs, “beating something like a workbench.” The officer testified that he then called out to Mr. Hanson, and “as soon as he sees me he starts to come directly towards me.” Officer Brewer testified that, though he ordered Mr. Hanson repeatedly to stop, Hanson “charged” toward him, walking “briskly” with two golf clubs in his hands. Officer Brewer testified that Hanson then raised the clubs above his head and said “I’m coming for you.” Officer Brewer retreated toward the street. He testified that, feeling trapped by the crashed PT *72 Cruiser and unable to safely retreat further, he fired his weapon three times, killing Mr. Hanson.
The district court found that this testimony differed materially from the testimony of Shirley Cooney, the Hansons’ neighbor who, along with her husband, Marty Cooney, witnessed the incident from her home across the street. In a statement Shirley Cooney provided shortly following the incident, she stated that she did not see whether or not Hanson was armed with golf clubs when he approached Brewer. At her later deposition, however, she testified that she did not see anything in Hanson’s hands when he came into her view as he retreated toward the street. While she agreed in that deposition that Mr. Hanson had approached Officer Brewer “briskly,” she stated that Mr. Hanson’s “hands were at his side” as he advanced toward Officer Brewer. Her husband Marty Cooney, both in his statement that night and in his deposition, indicated he was unable to see anything in Scott’s hands, explaining that “it is dark in that area because of the trees.”
The district court found that the discrepancy as to whether or not Mr. Hanson used golf clubs in threatening Officer Brewer was relevant in analyzing the reasonableness of Officer Brewer’s use of deadly force. In addition, the district court found that “controlling issues” of material fact remained as to whether Mr. Hanson was walking toward Officer Brewer with the golf clubs raised at the time he was shot and whether the officer’s opportunity to retreat was obstructed by the PT Cruiser. In light of these remaining issues of material fact, the district court denied summary judgment and qualified immunity to defendant.
On appeal, defendant argues that this Court has jurisdiction of this interlocutory appeal pursuant to the “collateral order doctrine” found in 28 U.S.C. § 1292. See Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Pursuant to this doctrine, he argues, our Court has jurisdiction over interlocutory appeals where the denial of summary judgment was based on qualified immunity. Id. On the merits, defendant first argues that the district court improperly imposed an “implicit duty to retreat” on Officer Brewer in considering whether his use of force was unreasonable and thus in violation of the Fourth Amendment. Second, defendant argues that the district court erred as a matter of law when it considered witness Shirley Cooney’s deposition testimony in concluding that a material issue of fact indeed remained as to whether or not Mr. Hanson was actually using golf clubs to threaten Officer Brewer at the time Mr. Hanson was shot. The clubs were found near his body after the shooting.
In response, plaintiff argues that because the district court’s denial of summary judgment was based on the existence of genuine issues of material fact rather than on purely legal issues, our Court lacks jurisdiction over this interlocutory appeal. See Johnson v. Jones, 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). In addition, plaintiff argues that even if our Court does have jurisdiction, we should affirm the district court’s denial of summary judgment because material issues of fact remain as to the incident that resulted in Hanson’s death.
ANALYSIS
The Supreme Court has held that where an order denying qualified immunity turns on a pure question of law, it may be appealed immediately. Mitchell, 472 U.S. at 511, 105 S.Ct. 2806. The Court has also held, however, that where the order turns on the existence of material issues of fact, it is not immediately appealable. Johnson, *73 515 U.S. at 319, 115 S.Ct. 2151. In Johnson, a district court denied several police officers’ motion for summary judgment on a plaintiffs § 1983 claim alleging excessive force. Id. The basis for the denial was the determination that material issues of fact existed as to the officers’ roles in the alleged beating. Id. On appeal, the Supreme Court held that the Seventh Circuit’s dismissal of the appeal for lack of jurisdiction was proper because “a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court’s summary judgment order insofar as that order determines whether or not the pretrial record sets forth a ‘genuine’ issue of fact for trial.” Id. at 319, 115 S.Ct. 2151.
In this case, the district court’s denial of the summary judgment motion filed by defendant claiming qualified immunity was clearly based on a determination that material factual disputes remained. Regarding the affirmative defense of qualified immunity asserted by defendant, the court stated:
In this case, the Court is unable to grant qualified immunity as to Officer Brewer because it is not clear whether his conduct violated a constitutional right. Whether or not his conduct passes constitutional muster hinges primarily on whether Mr. Hanson was wielding golf clubs at the time of the shooting, advancing toward Officer Brewer, and whether Officer Brewer was penned in by the PT Cruiser; facts that remain in dispute. A jury must, therefore, make a factual determination before the Court decides to afford Officer Brewer qualified immunity.
July 16, 2008 Opinion and Order at 10. As to the motion for summary judgment, the court stated:
In this case, whether Mr. Hanson had anything in his hands, whether Mr. Hanson was advancing toward Officer Brewer when he was shot, and whether Officer Brewer was penned in by the PT Cruiser are controlling issues, and the parties’ differing versions of the events creates genuine issues of material fact. These are factual questions for a jury to decide. It is impossible for the Court to determine whether Officer Brewer deprived Mr. Hanson of a federally protected right by the use of excessive force without first making a determination as to whether Officer Brewer’s conduct was reasonable.
July 16, 2008 Opinion and Order at 8. According to the district court, the issues that remain are factual and must be decided at trial. In denying both summary judgment and qualified immunity to Officer Brewer, the district court made clear that its determination on both issues was based on the existence of remaining disputed facts.
On appeal, defendant raises two issues. In an attempt to create a jurisdictional basis for his claims, defendant advances his argument in the form of two purely legal issues rather than acknowledging the factual issues that remain. First, he raises the issue of whether a police officer has a duty to retreat when attacked with a weapon. Second, he raises the issue of whether a witness is competent to offer testimony where that individual lacked personal knowledge of the events He raises this issue as to the deposition testimony of Shirley Cooney.
First, defendant incorrectly asserts that the district court erroneously held that there was a question of fact as to whether the police officer could safely have retreated further. Defendant concedes the district court did not expressly discuss whether Officer Brewer had a duty to retreat and acknowledges that an officer is not required to retreat before a display of *74 force by the adversary. Instead, the court concluded there was an issue of fact as to whether defendant was penned in by the parked PT Cruiser which had been driven into the side of the house since its location was one of the reasons given by defendant as to why he used deadly force. The court then continued with a discussion of whether Brewer’s conduct in shooting the decedent was reasonable.
Second, defendant’s argument that the district court erred in considering Shirley Cooney’s testimony is without merit. Defendant argues that, because Cooney wrote in her police statement that she “did not see if Scott had a weapon,” she lacked personal knowledge of the incident and her later testimony should be excluded as hearsay. Defendant further argues that, because her later deposition testimony contradicted her police statement, it should be excluded under Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999). In Cleveland, the Supreme Court stated that “a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party’s earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity.” Id. (emphasis added). This rule, however, applies only to parties, not to non-party witnesses like Shirley Cooney. We have never held that a non-party witness’ testimony is inadmissible where it conflicts with his or her prior statements and counsel has cited no authority to support that proposition. If defendant is concerned with the credibility of Mrs. Cooney as a witness, he will have the opportunity to cross examine her at trial. This admissible deposition testimony rebuts defendant’s argument that Mrs. Cooney had no personal knowledge of the incident. Accordingly, the district court properly considered the testimony of Mrs. Cooney in determining whether genuine issues of material fact remained as to the reasonableness of Officer Brewer’s conduct.
The dissent raises a third argument that it believes would support jurisdiction and justify reversal: if we resolve certain factual disputes in favor of the plaintiff and assume that the decedent was unarmed, Johnson poses no barrier to our consideration of the case. We do not agree. To begin, this argument was not raised by the parties nor presented to the district court. “[T]he general rule is that this court will not consider issues not raised in the district court.” Wright v. Holbrook, 794 F.2d 1152, 1157 (6th Cir.1986). As we’ve explained: “Two main policies justify this general rule. First, the rule eases appellate review by having the district court first consider the issue. Second, the rule ensures fairness to litigants by preventing surprise issues from appearing on appeal.” Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 552 (6th Cir.2008) (internal citations and quotations omitted). We “rarely” consider issues that were not raised below, id. at 552, and will do so only in “exceptional cases,” Friendly Farms v. Reliance Ins. Co., 79 F.3d 541, 545 (6th Cir.1996).
The fairness concerns underlying this rule are fully implicated in this case because the plaintiff did not have an opportunity to address the dissent’s concerns in the district court or in this Court. Had the issue been raised before the district court, perhaps the plaintiff could have presented additional facts that render qualified immunity inappropriate, even under the dissent’s analysis of the law. Or perhaps the plaintiff could have obtained additional time to garner such facts. See Fed.R.Civ.P. 56(f). In any event, qualified immunity — like the plethora of other issues that begin in the district court — should *75 first be decided by the district court before we become involved.
These concerns are doubly amplified where, as here, neither party has even advanced the argument for our consideration. “The premise of our adversarial system is that appellate courts ... essentially [act] as arbiters of legal questions presented and argued by the parties before them.” Carducci v. Regan, 714 F.2d 171, 177 (D.C.Cir.1983) (Scalia, J.). It would be improper to reverse the district court and end the plaintiffs case without the benefit of a lower court record or any briefing on the subject. See Citizens Coal Council v. ERA, 447 F.3d 879, 905 (6th Cir.2006) (en banc) (“In short, the panel majority erred in ruling on grounds not raised by the parties. Because it was improper for the panel majority to reach issues not briefed by the parties, ... we decline to reach those issues here.”); see also Lee v. Myers, 92 F.3d 1185, 1996 WL 444460 (6th Cir. Aug.6, 1996) (holding that it is improper for the district court to raise sua sponte a qualified immunity defense).
Pursuing the dissent’s reasoning would take us into an inquiry indistinguishable from that forbidden by Johnson. The dissent argues that the issue is one of law because we can apply the qualified immunity analysis to the facts viewed in the light most favorable to the plaintiff. But this is not the analysis of “neat abstract issues of law,” see Johnson, 515 U.S. at 316, 115 S.Ct. 2151 (internal quotations omitted), that the dissent believes it to be. We first must decide which facts we will resolve in favor of the plaintiff. The dissent suggests we can look to the “plaintiffs version” of events, but because the plaintiff was responding to other arguments in her briefing, it is not clear how we will determine what exactly the “plaintiffs version” is. Without aid from the parties, resolution of this appeal will “require reading a vast pretrial record, with numerous conflicting affidavits, depositions, and other discovery materials.” See id. Parsing through such a record is the sort of exercise that “trial judges, not appellate judges, confront almost daily,” making it appropriate for resolution at the place where this argument should have been raised: the district court. See id. In fact, inquiry into “whether or not the pretrial record sets forth a ‘genuine’ issue of fact for trial” is precisely the inquiry forbidden by Johnson. Id. at 317, 115 S.Ct. 2151. The concern that “review of such questions on interlocutory appeal ‘can consume inordinate amounts of appellate time’ by requiring the appeals court to comb a voluminous pretrial record to assess plaintiffs’ evidence,” Farm Labor Organizing Committee v. Ohio State Highway Patrol, 308 F.3d 523, 537 (6th Cir.2002) (quoting Johnson, 515 U.S. at 316, 115 S.Ct. 2151), holds special weight in this case, where we must start from scratch and proceed without illumination from the parties.
The fact-bound nature of an excessive force claim makes our inquiry even more problematic. “Evaluating the reasonableness of a use of force ‘requires careful attention to the facts and circumstances of each particular case,’ ” Vance v. Wade, 546 F.3d 774, 782 (6th Cir.2008) (quoting Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)), and requires us to examine “the totality of circumstances,” Fox v. DeSoto, 489 F.3d 227, 237 (6th Cir.2007). For qualified immunity, we must decide whether the force employed was “objectively unreasonable such that it could not have been based on a reasonable mistake of law.” Grawey v. Drury, 567 F.3d 302, 309 (6th Cir.2009). The dissent resolves a single issue in favor of the plaintiff: whether the decedent was holding the golf clubs when he was shot. But there exist several circumstances that *76 may or may not be relevant to our inquiry. What was the distance the decedent traveled after he lowered the clubs? How close was the decedent to the officer? What was the placement of the vehicles? Did he slow down after being ordered to do so? Perhaps there is no evidence to support a plaintiffs verdict on some of these issues. But we cannot make this inquiry on interlocutory appeal without violating the clear holding of Johnson. We therefore decline to reach the difficult question the dissent reaches: whether a police officer can reasonably use deadly force against an unarmed man under the specific factual circumstances the dissent would use.
The determination of whether defendant’s conduct was reasonable cannot be made while material issues of facts as to that evening’s events remain. The officer justified the use of deadly force under a defined version of facts; specifically, he stated that he was approached by a man wielding raised golf clubs. While we agree that Officer Brewer’s conduct was reasonable if the deceased was threatening Officer Brewer with raised golf clubs, if the deceased was threatening him but had lowered the clubs, the justification given by the officer may be no longer available. The reasonableness of defendant’s conduct would then be a different question, and we do not have defendant’s testimony to support the assertion that, given that factual scenario, shooting the decedent would be a reasonable response. If the deceased had no weapon in his hand, the immediate threat would be less and some lesser use of force might have been reasonable.
Because the denial of summary judgment on the basis of qualified immunity in this case resulted from the existence of factual issues for trial rather than purely legal issues, we find that, pursuant to Johnson, we are precluded from taking jurisdiction over this matter. 515 U.S. at 319, 115 S.Ct. 2151.
CONCLUSION
For the foregoing reasons, we DISMISS the present appeal for lack of jurisdiction.