**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0762n.06

Nos. 10-3668, 10-3693

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Jul 16, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| MOONSCOOP SAS and | ) | |
| MIKE YOUNG PRODUCTIONS, LLC, | ) | |
| | ) | |
|     Plaintiffs-Appellants (No. 10-3668), | ) | |
|     Cross-Appellees (No. 10-3693), | ) | On Appeal from the United States |
| | ) | District Court for the Northern |
| v. | ) | District of Ohio |
| | ) | |
| AMERICAN GREETINGS CORPORATION and | ) | |
| THOSE CHARACTERS FROM CLEVELAND, INC., | ) | |
| | ) | |
|     Defendants-Appellees (No. 10-3668), | ) | |
|     Cross-Appellants (No. 10-3669). | ) | |

Before:     BOGGS and MCKEAGUE, Circuit Judges; and GOLDSMITH,  District Judge.[*]

BOGGS, Circuit Judge.  This case deals with contract interpretation; specifically, whether a "drag-along" provision in a licensing contract would take effect automatically.  The district court held that it did, as a matter of law.  We hold that the contract provision was ambiguous on this point, and that the question of whether it would take effect automatically presents a genuine issue of material fact.  We therefore reverse that part of the district court's judgment.

---

[*] Hon. Mark A. Goldsmith, United States District Judge for the Eastern District of Michigan, sitting by designation.

I

American Greetings is the largest publicly traded greeting-card company in the world. MoonScoop is a French international entertainment and distribution company. The two parties entered into a sales contract under which MoonScoop was to purchase Strawberry Shortcake and The Care Bears, two of the most valuable properties of American Greetings. American Greetings was interested in selling, in part, to free itself from a costly licensing contract it had with The Cookie Jar Company, a Canadian entertainment and animation company. That licensing deal is the starting point of the current appeal.

In October 2001, American Greetings entered into a long-term contract with DIC Entertainment Corporation. The contract allowed DIC to act as a licensing agent for American Greetings's intellectual property rights in Strawberry Shortcake.[1] DIC could market and distribute certain video, TV, and products involving Strawberry Shortcake, making it the primary domestic and partial international licensing agent for most non-toy marketing segments.

In 2008, DIC transferred its rights in Strawberry Shortcake to Cookie Jar. American Greetings sued both DIC and Cookie Jar regarding this deal. The parties settled. As part of the settlement, American Greetings and Cookie Jar entered into three interrelated binding agreements, including, most importantly for this case, the 2008 Letter Agreement.

---

[1]Strawberry Shortcake was created in the 1970's by Those Characters From Cleveland, a wholly owned subsidiary of American Greetings. American Greetings owns the intellectual property in Strawberry Shortcake.

Under the 2008 Letter Agreement, Cookie Jar agreed, subject to certain conditions, to buy the Strawberry Shortcake and Care Bear properties owned by American Greetings and its affiliates for $195 million. Cookie Jar was required to secure necessary financing and close the transaction by September 30, 2008. If it failed to do so, American Greetings could shop one hundred percent of the properties, including all of the rights held by Cookie Jar, to other purchasers for six months. If American Greetings received an offer during that period, Cookie Jar was to have a five-day right to match it. If Cookie Jar failed to close on the match, then American Greetings could sell to the third party.

The 2008 Letter Agreement contained a "drag-along" provision. The drag-along provision stated:

> [I]f, during the Shop Period, A[merican] G[reetings] receives a Binding Term Sheet from a non-affiliate and subsequently closes such transaction within 75 days following receipt of the Binding Term Sheet, *A[merican] G[reetings] shall have the option to cause* C[ookie] J[ar] to consummate the transactions set forth in the Binding Term Sheet during such 75-day period (a "drag along"), which right shall run with the properties . . . . In the case of any drag along . . . *C[ookie] J[ar] shall provide reasonable cooperation* . . . . If AG . . . exercises any of such drag along . . . . rights, C[ookie] J[ar] shall receive 20%. . . of the gross proceeds . . . . All payments to C[ookie] J[ar] must be in cash and paid in full at the closing . . . .

(emphasis added). The drag-along thus allowed American Greetings to "cause" Cookie Jar to participate in the sale to a third party. The drag-along stated that Cookie Jar "shall provide reasonable cooperation" in the process. American Greetings had the option to invoke the drag-along for seventy-five days following Cookie Jar's receipt of a Binding Term Sheet, representing a sales contract between American Greetings and a buyer. If the drag-along was exercised, Cookie Jar was

to receive 20% of the gross proceeds of the sale of the properties, and this amount had to be in cash and paid in full at the closing.

Cookie Jar failed to meet its obligation to purchase Strawberry Shortcake and the Care Bears for $195 million by September 30, 2008. After Cookie Jar's default, American Greetings began soliciting bids from other potential buyers as was allowed by the six-month shopping period in the 2008 Letter Agreement.

On March 24, 2009, American Greetings and MoonScoop signed a $95-million contract (the "Binding Term Sheet") for sale of "the Properties," which consisted not only of Strawberry Shortcake and the Care Bears, but also "all rights in those properties held by Cookie Jar Entertainment, Inc. and all its affiliates." The properties were to be transferred to MoonScoop "at the closing, free and clear of all liens, claims, and security interests, except for the interests held by Hasbro and by existing licensees in the normal course." The Binding Term Sheet stated that the closing would occur within 75 days of its signing.

On March 30, Cookie Jar stated its intent to match the MoonScoop sale price. On April 30, though, it notified American Greetings that it could not secure financing. In the April 30th letter, Cookie Jar also stated that American Greetings had given MoonScoop unequal terms (namely a longer timeframe to obtain financing) and had thus dishonored Cookie Jar's matching right. Cookie Jar repudiated any obligation it had to cooperate with the sale, stating that "we believe that AG has no legal right to 'drag along' Cookie Jar's rights . . . given the circumstances and the terms of the offer made by MoonScoop" and that American Greetings was "attempting to enforce the 'drag along' where it has no right to do so."

In response, American Greetings sued Cookie Jar, seeking declaratory relief and specific performance relating to Cookie Jar's obligation to relinquish its rights in Strawberry Shortcake pursuant to the drag-along provision. In a separate suit filed the same day, Cookie Jar sued American Greetings and MoonScoop, seeking a declaration that American Greetings could not drag Cookie Jar along.

On May 27, representatives of MoonScoop and its financing partners, Classic Media and GTCR Golder Rauner LLC, met at the headquarters of American Greetings to discuss the deal. MoonScoop alleged that the meeting was largely to get assurances that American Greetings would deliver Cookie Jar, and that American Greetings provided these assurances.

On June 1, financing partner GTCR sent a request to American Greetings, asking that the June 7 closing date be tolled until the resolution of the Cookie Jar claims. American Greetings refused, but suggested closing on or before June 7 into escrow. MoonScoop and GTCR declined.

On June 2, the president of American Greetings sent an email to Cookie Jar's CEO, stating that in light of Cookie Jar's unambiguous statements that it would not comply with the drag-along, American Greetings "concluded that judicial intervention was necessary to force a sale of those rights."

On June 5, 2009, American Greetings's general counsel sent a letter to Cookie Jar, warning that its refusal to comply with the drag-along would "defeat American Greetings's ability to close on the transaction with MoonScoop," indicated that it was invoking the drag-along rights, and asked Cookie Jar to indicate in writing that day whether it intended to comply.

Finally, on June 7, 2009, seventy-five days after Cookie Jar had received the Binding Term Sheet and therefore the last day of the 2008 Letter Agreement option period to invoke the drag-along rights, American Greetings, MoonScoop, and GTCR held a conference call. Litigation between American Greetings and Cookie Jar was ongoing. During the call, MoonScoop's representatives stated that its financing was conditioned on its entering a long-form agreement that would extinguish Cookie Jar's rights. No agreement was reached.

At 11:48 pm, in a last-minute effort to save the deal, MoonScoop faxed and emailed a letter to American Greetings stating that MoonScoop and its financial backers were willing to close the deal on the terms of the original Binding Term Sheet. However, American Greetings did not respond to this offer.

On June 9, the president of American Greetings sent an email stating that the deal with MoonScoop fell through "because we couldn't agree on how to handle Cookie Jar's unwillingness to be dragged along . . . . Obviously the other side was not willing to pay us without knowing for sure we could deliver and we needed to make sure that if we signed something we wouldn't be sued by the other party if we couldn't deliver because of Cookie Jar. . . . It is ironic . . . that we finally had a buyer who had the cash and was willing to pay us and close if not for Cookie Jar."

In August 2009, MoonScoop sued American Greetings in diversity in the United States District Court for the Northern District of Ohio, claiming that American Greetings breached their contract and sought specific performance or damages. American Greetings responded, while also

filing a third-party complaint against Cookie Jar, claiming that Cookie Jar's refusal to cooperate with the drag-along provision caused any liability that American Greetings owed to MoonScoop.[2]

American Greetings and MoonScoop filed cross-motions for summary judgment, in which each party accused the other of failing to deliver Cookie Jar's rights. American Greetings argued that MoonScoop was at fault because, by not paying the $95 million on June 7, MoonScoop allowed the drag-along right to expire. American Greetings argued that the drag-along provision was the only means by which the parties had envisioned delivering Cookie Jar's rights, that the drag-along was self-executing, and thus that the provision would have delivered all of Cookie Jar's rights so that the Properties were delivered "free and clear," and that time was of the essence in the contract. Moonscoop argued that American Greetings breached the contract before June 7, when it became clear that it could not deliver Cookie Jar's rights as it had promised to do in the Binding Term Sheet. MoonScoop argued that because American Greetings was in material breach on June 7, MoonScoop had the option to refuse to pay and to sue for damages or, as agreed in the Binding Term Sheet, for specific performance. Moonscoop contended that the drag-along was not self-executing but required Cookie Jar's cooperation, and that even if the drag-along had been successfully used it still would not have guaranteed delivery of all of Cookie Jar's rights.

The district court granted American Greetings's motion for summary judgment. It denied MoonScoop's motion for summary judgment, but granted part of it, agreeing with MoonScoop that

---

[2]In response, Cookie Jar filed counterclaims against American Greetings and claims against MoonScoop, claiming American Greetings and MoonScoop conspired to deprive Cookie Jar of its licensing rights and its option to buy the properties. These claims are not at issue in this appeal.

American Greetings must indemnify it against the third-party claim made against MoonScoop by Cookie Jar.

The court held that express language in the Binding Term Sheet regarding the drag-along provision (that American Greetings could "cause" Cookie Jar to relinquish its rights)and the surrounding circumstances (the importance the parties placed on closing within seventy-five days) indicated that time was of the essence in this contract. MoonScoop did not tender the purchase price by June 7, 2009; instead, it informed American Greetings that it was ready and willing to pay for the properties. MoonScoop's nonpayment caused the drag-along provision to expire. The district court held that the drag-along, had MoonScoop activated it by tendering payment, would have automatically terminated Cookie Jar's rights. Therefore, MoonScoop was at fault for the fact that Cookie Jar's rights were not delivered. Therefore, the district court denied in part MoonScoop's motion for summary judgment, which would have entitled it to specific performance or damages. It granted American Greetings's motion for summary judgment against MoonScoop, allowing American Greetings to extinguish all its obligations under the Binding Term Sheet.

Finally, the district court granted in part MoonScoop's motion for summary judgment against American Greetings by declaring that American Greetings must "defend and indemnify" MoonScoop for the claims filed against it by Cookie Jar.

We reverse the district court's grant of summary judgment for American Greetings. We affirm the district court's partial denial of summary judgment for MoonScoop and the district court's grant partial grant of summary judgment for MoonScoop, regarding MoonScoop's claim that American Greetings must indemnify it against the third-party claim made against it by Cookie Jar.

II

We review a grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party and drawing all inferences in that party's favor. *Jones v. Blige*, 558 F.3d 485, 490 (6th Cir. 2009). Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574 (i986). A dispute is only "genuine" where it is "based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party." *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir. 2009).

III

A

The key inquiry in this case is whether the Binding Term Sheet made time of the essence, and this hinges on whether the drag-along provision was self-executing. This is an issue of contract interpretation.

Generally the interpretation of a contract is, under Ohio law, a matter of law for the court. *St. Marys v. Auglaize Cty. Bd. of Comm'rs*, 875 N.E.2d 561, 568 (Ohio 2007). The court's interpretation is reviewed de novo. *Ibid.* But when a contract is susceptible to two or more reasonable interpretations, the resolution of the ambiguity is an issue for the trier of fact. *Cent. Ohio Joint Vocational Sch. Bd. of Educ. v. Peterson Construction Co.*, 716 N.E.2d 1210, 1213 (Ohio App. 1998) (citing *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.*, 474 N.E.2d 271, 272 (Ohio 1984)). In this case, the court seemed to ignore the ambiguity in the Binding Term Sheet.

The court held that MoonScoop's timely payment would have resulted in the automatic drag-along of Cookie Jar's rights into the transaction. However, the court's reasoning is not clear.

The plain language of the 2008 Letter Agreement does not indicate that the parties necessarily intended the drag-along provision to be automatic. The Binding Term Sheet did not state expressly that the drag-along was "automatic" or "self-executing." On the one hand, it did state that American Greetings could "cause" Cookie Jar to relinquish rights, and the clause itself is called a "drag-along," indicating that Cookie Jar could be forced to cooperate, perhaps with automatic effect. On the other, it stated that Cookie Jar would "cooperate" and "participate," which indicate that Cookie Jar's cooperation might be essential to the clause's operation. Further, the effect of the clause was in dispute amongst the parties, and the clause was the subject of separate litigation between Cookie Jar and American Greetings. When the language of a contract is unclear or circumstances invest the language with special meaning, extrinsic evidence may be used to clarify the parties' intentions. *Thompson v. Cmty. Ins. Co.*, 213 F.R.D. 284, 297–98 (S.D. Ohio 2002). Not only was the meaning unclear here, but the Binding Term Sheet expressly repudiated a merger clause. The district court should have looked to the parties' actions to give effect to the clause, which it either did not do or did not explain in any detail. Under Ohio law, the district court should have "given great weight to the practical construction provided by the parties themselves to the contract." *Lippencott v. Lippencott*, No. 93 CA 16, 1993 WL 476230 at *5 (Ohio Ct. App. Nov. 17, 1993).

The parties' conduct in the record, viewed in the light most favorable to MoonScoop, as is required at the summary-judgment stage, suggests that there was a genuine issue as to whether the drag-along was, or even could be, self-executing. After all, when A and B agree that C will give up

certain rights, with no clear authority for anyone to force C to do so, some ambiguity seems possible.

Moonscoop has argued since its original complaint that the drag-along was not automatic. It argues that due to the ongoing litigation between American Greetings and Cookie Jar on this point, the drag-along could not have taken effect without a court decision. More specifically, MoonScoop notes that the litigation between Cookie Jar and American Greetings centered on whether Cookie Jar's matching right had been properly observed. A determination that Cookie Jar's matching right had been violated might have invalidated American Greetings's right to sell the properties at all, at least without breaching its 2008 Letter Agreement with Cookie Jar.[3] MoonScoop provided letters in which Cookie Jar also argued that American Greetings had no legal right to drag it along. MoonScoop provided emails and letters from American Greetings stating that Cookie Jar made it impossible for American Greetings to deliver the properties by refusing to comply with the drag-along, implying that American Greetings did not view the drag-along as self-executing. Though on appeal American Greetings disputes MoonScoop's argument that the drag-along was not self-executing, its past actions show that it, too, acted as though the drag-along was not self-executing.

American Greetings filed suit against Cookie Jar in May 2009 in order to obtain a declaratory judgement that Cookie Jar had to cooperate with the drag-along. On appeal, American Greetings argues that the only reason for this action was to reassure MoonScoop. Nevertheless, American

---

[3]The district court also noted that Cookie Jar's matching rights may have been violated by the deal with MoonScoop, but erroneously placed the impact of that violation on MoonScoop, and not on American Greetings's ability to fully deliver Cookie Jar. If the matching right had been violated, then the drag-along could not be invoked—the honoring of the matching right was a necessary prerequisite to the successful implementation of the drag-along.

Greetings's actions certainly could lead a reasonable person to think that it was unsure of its legal ability to drag Cookie Jar along. In American Greetings's response to MoonScoop's original complaint in this action, it stated that "Cookie Jar prevented the MoonScoop transaction from closing." American Greetings also admitted in response to interrogatories that on May 29 MoonScoop stood ready, willing, and able to close, but that Cookie Jar prevented the closing. It is difficult to see why American Greetings would blame Cookie Jar for preventing the closing if the drag-along could be effected without Cookie Jar's consent or cooperation. As a final example, American Greetings filed a third-party complaint against Cookie Jar in the current litigation, claiming that any liability that American Greetings had to MoonScoop was due to Cookie Jar's refusal to relinquish its licensing rights in the properties; in other words, its refusal to be dragged along. Evidence taken from American Greetings's own submissions indicates a genuine question as to whether the drag-along was self-executing.

The issue of whether the drag-along clause self-executing is capable of affecting the outcome of the suit, and is therefore material. *Lapeer Cnty., Mich v. Montgomery Cnty., Oh.*, 108 F.3d 74, 78 (6th Cir. 1997). If the drag-along, as MoonScoop argues, was not self-executing, or was invalid due to American Greeting's failure to honor Cookie Jar's matching right, then American Greetings did not deliver the properties "free of liens and claims" to MoonScoop on June 7. American Greetings did not do so because on June 7 Cookie Jar had no intention of relinquishing its rights and was litigating to prove that it did not have to comply with the drag-along. By not delivering the properties as promised, American Greetings may have been in material breach of the Binding Term Sheet.

B

American Greetings makes a number of other arguments to tempt this court to affirm the district court's grant of summary judgment despite the ambiguity of the drag-along clause, but these arguments are unavailing. American Greetings argues, for example, that if Cookie Jar's cooperation with the drag-along was required, then American Greetings's failure to secure that consent excuses American Greetings's performance as a failure of an express condition precedent. The relevant clause in the Binding Term Sheet states:

> The obligations of [the parties] are conditioned solely upon satisfaction or waiver of the following conditions . . . (ii) receipt of all material necessary third party consents and approvals . . . .

At least as a matter of law at the summary-judgment stage of the litigation, drawing all inferences in MoonScoop's favor, we cannot hold that American Greetings could use its own failure to obtain Cookie Jar's consent to excuse its own obligations under the Binding Term Sheet. The more natural reading of the clause is that if one party failed to obtain receipt of material necessary third-party consents, then the other party would not have to perform. For example, if American Greetings failed to get Cookie Jar's consent to transfer its rights in the properties then MoonScoop would not have to perform.

American Greetings also argues that MoonScoop failed to complete the other express conditions precedent to closing and that this failure to perform excused American Greetings's performance. The conditions to which American Greetings refers are "(i) regulatory approval . . . and (iii) within 30 days of the Binding Term Sheet, receipt of financing . . . on terms and conditions that are commercially reasonable in the circumstances and reasonably acceptable to M[oonScoop]."

Financing was obtained by MoonScoop, but regulatory approval had not been obtained as of June 7. However, whether or not MoonScoop breached by not meeting these conditions depends on whether American Greetings was already in material breach for failing to deliver Cookie Jar. If American Greetings was already in breach, then MoonScoop was justified in halting performance and suing for damages, excusing MoonScoop from having to meet the final conditions. *Brakefire, Inc. v. Overbeck,* 878 N.E.2d 84, 101–02 (Ohio Com. Pl. 2007). Under those circumstances, MoonScoop was not required to perform the expensive futility of pursuing regulatory approval. Therefore, this issue cannot be decided until the district court has decided the issue of American Greetings's breach on remand.

Finally, American Greetings argues that MoonScoop was literally not able to perform on June 7, because MoonScoop agreed to pay too late in the day for American Greetings to receive payment and send it to Cookie Jar in order to trigger the drag-along. This failure, argues American Greetings, excuses American Greetings from performance. This argument again ignores the fact that if American Greetings was in material breach of contract on June 7, then MoonScoop would be entitled to halt performance and sue for damages. *Brakefire*, 878 N.E.2d at 101–02.

The existence of a genuine issue of material fact, as exists in this case, means that summary judgment for American Greetings should have been denied.[4]

---

[4]Similarly, because questions of material fact persist however, the court's partial denial of summary judgment for MoonScoop on the same issues was proper.

C

MoonScoop moved for summary judgment not only on American Greetings's alleged breach of contract, but also on American Greetings's contractual obligation to indemnify MoonScoop for claims brought against it by Cookie Jar. The district court was correct to grant MoonScoop summary judgment on this issue. The district court held that the plain language of the Binding Term Sheet signified that MoonScoop should be so indemnified. The Binding Term Sheet provides:

> If any of MoonScoop, its subsidiaries and/or its affiliates, . . . is named as a party in any claim or legal action arising from the purchase of the Properties and the claimant or claimants in such action assert that AG did not have the legal right to sell and transfer the Properties to MoonScoop, as provided herein *or such third party claims or actions otherwise arise as a result of the submission or execution of this Binding Term Sheet, then AG shall indemnify and defend the MoonScoop parties against any costs, expenses and liabilities resulting from such claim or action*; provided, that AG shall be entitled to prosecute such defense and assume control of all settlement negotiations; . . . MoonScoop shall be permitted to participate in the defense with its own counsel at its own cost. If, in MoonScoop's reasonable, good faith belief, AG fails to provide an adequate defense to any claim or action, MoonScoop may take any actions necessary to adequately defend itself at AG's expense. The indemnification provisions set forth herein shall survive indefinitely.

(emphasis added). American Greetings argues on appeal that it should not have to indemnify MoonScoop against Cookie Jar's claims because in this suit MoonScoop is not "named as a party," but rather was the plaintiff. However, MoonScoop was the plaintiff only as to the claims against American Greetings, for which MoonScoop does not seek indemnification. Cookie Jar was brought into the litigation by American Greetings as a third-party defendant, with American Greetings as the third-party plaintiff. Cookie Jar then initiated its own claims against MoonScoop, and on those claims MoonScoop is indeed "named as a party," which brings the claims under the indemnification agreement. Even though MoonScoop is the plaintiff in the main action and not a named party, it

- 15 -

is the defendant in the "cross-claim" made by Cookie Jar and is therefore a named party for the purposes of these claims. Therefore, the plain language of the indemnification provision requires that American Greetings indemnify MoonScoop against Cookie Jar's claim.

American Greetings further argues that MoonScoop's "failure to properly demand defense" and its decision to retain its own counsel in the district court is fatal to its claim for indemnification. However, the district court points to two letters wherein, in response to MoonScoop inquiring about indemnification for the Cookie Jar cross-claims, American Greetings flatly denied that any indemnity obligation exists. The record reflects that American Greetings denied its obligation to MoonScoop, *not* that MoonScoop hired counsel in contravention of its duty to allow American Greetings to defend it. It is true MoonScoop did not request that American Greetings indemnify it until its Second Amended Complaint was filed. However, Cookie Jar did not file its cross-claim against MoonScoop until the day before MoonScoop filed its first amended complaint, so MoonScoop could not have requested indemnification any earlier. The district court did not err in holding that MoonScoop did not delay unduly in filing its second amended complaint requesting indemnification.

IV

For the foregoing reasons, we REVERSE the district court's grant of summary judgment for defendant–appellee American Greetings. We AFFIRM the denial of partial summary judgment for plaintiff–appellant MoonScoop and the partial grant of summary judgment for plaintiff–appellant MoonScoop regarding indemnification. We REMAND the case for further consideration in light of the court's opinion.

**McKEAGUE, Circuit Judge, concurring in part and dissenting in part.** I concur with the majority's opinion on the issue of indemnification. I must dissent, however, from its conclusion that a genuine issue of material fact precludes summary judgment on the issue of breach.

The majority reaches its conclusion by reasoning that (1) whether the drag-along provision was self-executing or not is ambiguous and (2) such issue is material to the outcome of the case. My dissent is based on disagreement with the latter.

The general rule under Ohio law is that "before recovery can be had upon a contract the plaintiff must show either that he substantially performed or tendered performance of the conditions on his part to be performed." *Thomas v. Matthews*, 113 N.E. 669, 674 (Ohio 1916). The general rule is "subject to the exception that a tender is unnecessary where it would merely be a useless ceremony," *Gebbie v. Efros*, 116 N.E. 31, 33 (Ohio 1917), such as where a party "makes it certain that he does not intend under any circumstances to comply," *George Wiedemann Brewing Co. v. Maxwell*, 84 N.E. 595, 597 (Ohio 1908), or "is clearly unable to perform his part of the contract," *Gebbie*, 116 N.E. at 33. *See also Farmers Comm'n Co. v. Burks*, 719 N.E.2d 980, 990 (Ohio 1998) (*"Once one party to a contract repudiates, the other party is entitled to a judgment without the necessity of tendering performance.")*.

The record does not support an inference that American Greetings demonstrated an unequivocal intent not to comply, and even assuming American Greetings was clearly unable to deliver the properties free and clear of the Cookie Jar litigation on June 7, MoonScoop waived any right to demand that it do so by acting inconsistently with this claimed right. Thus, whether the drag-

along was self-executing or not, MoonScoop simply has no legal basis upon which to insist on recovery notwithstanding its own failure to perform.

Under Ohio law, a nonperfoming party must show that the other party's repudiation was unequivocal—"a mere expression of doubt as to willingness or ability to perform is insufficient to constitute repudiation." *Burks,* 719 N.E.2d at 990. As stated by the Ohio Supreme Court:

> [W]hen the other party repudiates and *makes it certain that he does not intend under any circumstances to comply*, a showing of readiness and ability on the part of the complaining party to then and there perform his part, communicated to the other party and accompanied with demand of compliance by such other party, is sufficient compliance without an actual formal tender.

*Wiedemann*, 84 N.E. at 598 (emphasis added).[1] In *Wiedemann*, the Wiedemann Brewing Company exercised an option to lease a building owned by the Maxwells, and the parties agreed to meet at a certain time and place to execute the necessary papers. The Maxwells failed to appear. Wiedemann's agent found the Maxwells near their attorney's office and informed them that Wiedemann was ready to execute the lease. The agent was informed in no uncertain terms that the Maxwells did not intend to comply with the lease agreement and that, in fact, they had leased the property to a different company the day before. Noting that "at no time, then or afterward, did the Maxwells show any disposition to comply with the option contract, but stood by their refusal," the court found that Wiedemann could sustain its action for specific performance despite its failure to

---

[1]The *Wiedemann* rule has been consistently followed in Ohio since 1908. *See, e.g.*, *Tighe v. Wilson*, 427 N.E.2d 531, 533 (Ohio Ct. App. 1980); *Bahner's Auto Parts v. Bahner*, 1998 WL 470494, at *3 (Ohio Ct. App. July 23, 1998) (unpublished).

perform under the contract. *Id*. at 597. Under such circumstances, "[t]he conduct of the other parties was such as to render [the tender of the lease or payment of rent] a mere idle ceremony." *Id*.

Even viewing record in the light most favorable to MoonScoop, American Greetings's conduct falls far short of indicating it did "not intend under any circumstances to comply." *Id*. at 598. To the contrary, American Greetings did all it could to make the deal happen. It filed suit against Cookie Jar, seeking declaratory relief and specific performance of the drag-along right, to establish certainty in the MoonScoop deal. It sought to accommodate MoonScoop's financial backer by negotiating a long form asset-purchase agreement acceptable to the backer, R. 87-13, even though the duty to acquire acceptable financing was squarely on MoonScoop, R. 89-6, Binding Term Sheet, at 2. By MoonScoop's own admission, American Greetings expressed that it would "bend [over] backwards" to make the deal happen. R. 132, Vaturi Dep., at 45-46. Joel Vaturi, who took part in the negotiations on behalf of MoonScoop, testified that at a May 27 meeting, American Greetings said they would "live by the contract" and that "Cookie Jar was their problem." R. 132, Vaturi Dep., at 51-52.

It is true that if the drag-along provision were not self-executing, American Greetings may not have been able to perform its end of the bargain on June 7 despite its best efforts. The concurring opinion cites cases stating that a buyer may maintain an action without tendering payment when a seller is clearly unable to perform. One such case, *Resolution Trust Corp. v. York*, No. C-960180, 1997 WL 78591 (Ohio Ct. App. Feb. 26, 1997), involved a buyer who stopped making monthly installment payments on a piece of land when he found out that there was a tax lien on the property. The buyer contended that the seller breached his end of the contract to convey marketable

title. The seller argued that his duty to convey marketable title never materialized because the buyer never tendered full performance. The Ohio Court of Appeals held, "Once it became apparent that [seller] would never be able to perform (clear the title), [buyer] could repudiate the contract and sue for damages." *York*, 1997 WL 78591, at \*2. *Gebbie v. Efros*, 116 N.E. 31, 33 (Ohio 1917), similarly involved "an incumbrance on the property which had not been and could not be removed," a fact the court found "clear and explicit." Noting that "[i]t would have been an idle ceremony on the part of defendant . . . to pay or offer to pay the balance of the purchase price under such circumstances," the court held that the buyer did not need to tender payment of the balance before he could maintain an action for damages. 116 N.E. at 33.

*Gebbie* and *York* are inapposite. Those cases involved sellers of real estate whose inability to perform (deliver clear title) was beyond question and buyers who immediately stopped performance and sued for damages upon discovering the true condition of the land. All *Gebbie* and *York* establish is that MoonScoop had an avenue of relief that it did not pursue. If it were clear that American Greetings would never be able to perform, MoonScoop had a right to stop working on its end of the deal (obtaining financing to make timely payment) and seek legal redress. Instead, fully aware of the Cookie Jar litigation, MoonScoop nonetheless proceeded with the deal.

Under Ohio law, a party may waive contractual terms by intentionally acting in a manner inconsistent with the claimed right and thereby be estopped from insisting upon it. *See, e.g.*, *Marfield v. Cincinnati, D. & T. Traction Co.*, 144 N.E. 689, 691 (Ohio 1924) ("A waiver is the voluntary surrender or relinquishment of a known legal right or intentionally doing an act inconsistent with claiming it . . . . In the latter case, . . . there may be an estoppel from insisting upon

- 20 -

the right claimed to have been relinquished."); *Daniel E. Terreri & Sons, Inc. v. Mahoning Cnty. Bd. of Comm'rs*, 786 N.E.2d 921, 932-33 (Ohio Ct. App. 2003) ("Under the doctrine of 'waiver by estoppel' or implied waiver, a party to a contract may waive the right to literal compliance with the terms of the contract by engaging in actions or a course of conduct inconsistent with literal compliance." (citing 13 Williston on Contracts § 39:29)). The record is clear that MoonScoop intentionally acted inconsistently with any right to have the properties free and clear of Cookie Jar's claims by June 7. From the very beginning, MoonScoop was aware of the possibility of litigation by Cookie Jar, and the Binding Term Sheet provided MoonScoop protection against this threat in the form of a provision requiring American Greetings to indemnify MoonScoop against claims asserting that American Greetings did not have the legal right to sell and transfer the properties to MoonScoop. R. 132, Vaturi Dep., at 260; R. 89-6, Binding Term Sheet, at 5. MoonScoop understood that part of the reason for the indemnification provision was to protect MoonScoop against potential claims by Cookie Jar. R. 132, Vaturi Dep., at 83.

As June 7 drew closer and it became clear that Cookie Jar did not intend to comply with the drag-along, MoonScoop progressed with the deal even as it accused American Greetings of being unable to deliver the properties free and clear by June 7. R. 132-28, Email from Vaturi to Ellenbogen. On the morning of June 7, Vaturi sent an email to Josef Mandelbaum, CEO of American Greetings' Intellectual Property Group, in which Vaturi stated, "The agreement . . . requires that the properties be handed over with no pending material claims, and we now all know that this won't be the case unless a settlement takes place with Cookie Jar within the next hours [sic]." Vaturi continued that MoonScoop still "very strongly want[s] to close this deal in a friendly

manner." Regarding the Cookie Jar matter, Vaturi indicated that MoonScoop would be satisfied with adequate representations and warranties and legal action against Cookie Jar, as long as MoonScoop remained without harm. R. 132-30, Email from Vaturi to Mandelbaum, at 1-2. Finally, in the communication sent by MoonScoop at 11:48 p.m. on June 7 indicating that it was ready and willing to close, Vaturi again stated MoonScoop's understanding that American Greetings was "unable to 'drag along' Cookie Jar . . . and thus [was] not currently in a position to deliver all of the Properties free and clear of all liens, claims, and security interests as provided by the Binding Term Sheet." Vaturi nonetheless indicated MoonScoop's desire to close the deal and gave American Greetings a 60-day window within which to comply with the Binding Term Sheet: "if the Properties are not delivered in accordance with the terms of the Binding Term Sheet within 60 days of this letter, MoonScoop cannot be obligated to fund as we may no longer have our financing." R. 132-33, Letter from Vaturi to Mandelbaum, at 3-4. Regardless of whether American Greetings could have performed or not, MoonScoop waived any right to demand that the properties be delivered June 7 free of any claims by Cookie Jar by acting utterly inconsistently with such a right; thus, it may not rely upon the Cookie Jar litigation as a basis for its current action.[2]

The concurring opinion finds "nothing in Ohio law that would penalize a party for continuing to work to salvage a transaction in the face of apparently impossible odds." While this may be true

---

[2]I do not contend that MoonScoop waived its right to ultimately receive the properties free and clear. I merely point out that MoonScoop was willing to accept the properties with the Cookie Jar litigation pending as of June 7, as long as American Greetings indemnified it and the claims were resolved within 60 days. Accordingly, MoonScoop cannot now maintain an action by claiming that American Greetings was in breach because it could not have delivered by June 7.

as a general statement, Ohio law does prevent a party from later asserting a right that it previously waived through its conduct. *See, e.g.*, *Nat'l City Bank v. Rini*, 834 N.E.2d 836, 840 (Ohio Ct. App. 2005) (finding that a bank waived its right to impose personal liability upon a guarantor of a debt because, after the guarantee was signed, the bank informed the guarantor that the debt was secured by business assets only and that he was not a personal guarantor); *Northwoods Condo. Owners' Ass'n v. Arnold*, 770 N.E.2d 627, 630 (Ohio Ct. App. 2002) (finding that a purchaser of a condominium who had actual knowledge of a pet restriction on the property before purchase waived any right to later assert that the pet restriction was illegally adopted).

In short, this is a simply case where neither party lived up to its contractual obligations: MoonScoop did not pay by the deadline, and American Greetings did not deliver the properties. Because neither party performed or tendered performance, "the duty of neither party becomes due under the contract, and neither party can be in breach of contract, despite the fact that each party has failed to perform as promised." 15 Richard A. Lord, Williston on Contracts § 43:31 (4th ed.); *see also Raudabaugh v. Hart*, 55 N.E. 214, 217 (Ohio 1899) ("So long, therefore, as there is no tender of the deed on the one hand, nor of performance on the other, neither party is in default."). The deal simply fell through, as deals sometimes do, and no right of action accrued to either party. For these reasons, I respectfully dissent.

MARK A. GOLDSMITH, District Judge, concurring. I concur with the lead opinion's conclusion reversing in part and affirming in part the district court's judgment. I write separately, however, to address arguments made in the partial dissent that critique the lead opinion's analysis.

The parties offer competing views regarding their failure to consummate the transaction in which MoonScoop was to acquire not only the Strawberry Shortcake and Care Bears properties owned by American Greetings and its affiliates, but also "all rights in those properties held by Cookie Jar" – rights that were to be transferred "at the closing, free and clear of all liens, claims and security interests [except for certain interests not relevant here]. . . ." MoonScoop's breach of contract claim is premised on its contention that the failure to close is attributable to American Greetings' failure to bring about a transfer of Cookie Jar's rights in those properties and relinquishment of claims through some kind of acknowledgment by Cookie Jar or judicial order. American Greetings contends that it did not breach because Cookie Jar's rights would have been transferred automatically at the closing, pursuant to a "drag along" provision in the 2008 Letter Agreement between Cookie Jar and American Greetings, if only MoonScoop had actually deposited the purchase price – a position adopted by the court below.

One or the other party is correct, but I cannot determine which one, as a matter of law, based on the current record. For American Greetings to prevail on summary judgment, I would have to conclude that there is no disputed issue of fact that the 2008 Letter Agreement between American Greetings and Cookie Jar would have automatically transferred Cookie Jar's rights upon payment of the purchase price by MoonScoop to American Greetings and payment to Cookie Jar of the

amounts owed to it under the 2008 Letter Agreement, pursuant to the "drag along" provision. The evidence recited in the lead opinion makes clear that there is a disputed issue of fact on this point.

However, the partial dissent claims that a disputed issue of fact on this point is not sufficient to forestall summary judgment against MoonScoop on its breach of contract claim, because MoonScoop never tendered performance. The partial dissent maintains that MoonScoop might be correct in its assertion that American Greetings had breached, but it concludes that MoonScoop's failure to tender the purchase price left MoonScoop only with a right to be excused from further performance under the contract and barred it from suing for breach of contract. The partial dissent's reasoning is based on the premise that MoonScoop could only sue for breach if its failure to tender performance was excused, and that tender was not excused. The partial dissent also finds that, regardless of whether tender of performance was excused, MoonScoop had waived any right to demand conveyance of the properties free and clear of Cookie Jar's rights by the end of the closing deadline specified in the contract. I respectfully disagree with both contentions.

The partial dissent properly notes that, under Ohio law, the general requirement of tender by the party alleging breach is excused when such tender "would merely be a useless ceremony." *Gebbie v. Efros*, 116 N.E. 31, 33 (Ohio 1917). The partial dissent further notes that this general principle has been applied where a party "makes it certain that he does not intend under any circumstances to comply," *George Wiedemann Brewing Company v. Maxwell*, 84 N.E. 595, 597-98 (Ohio 1908), and where a party "is clearly unable to perform his part of the contract." *Gebbie*, 116 N.E. at 33. According to the partial dissent, the facts of our case do not come within either of these two broad sets of circumstances excusing tender.

Regarding willingness to perform, the partial dissent maintains that American Greetings' efforts to make a deal happen fall short of demonstrating that it did not intend to comply with the contract. However, Ohio law recognizes that an inability to perform may be the equivalent of a refusal to perform, making it irrelevant that American Greetings may have endeavored to save the transaction. This is illustrated in *Gebbie*, where the Supreme Court of Ohio upheld the right of a purchaser of real estate to sue for damages where the seller was unable to deliver unencumbered title, even though the purchaser failed to tender or even offer to tender the purchase price:

> It seems to be well settled that the rule relating to tender on the part of the purchaser is subject to the exception that a tender is unnecessary where it would be merely a useless ceremony, *as where the vendor is clearly unable to perform his part of the contract*, where, for instance, there is an incumbrance upon the property which he is unable to remove.
>
> * * * *
>
> If plaintiff in error was unable, for the reasons set forth in the petition, to convey an unincumbered title to the real estate in question, she could not, as a matter of course, deposit a warranty deed, the instrument by which such a title was to be conveyed, *and her inability to do this was in effect a refusal to do so*. It would have been an idle ceremony on the part of the defendant in error to pay or offer to pay the balance of the purchase price under such circumstances.

*Id.* at 33 (emphasis added).

That a party's tender is excused where the opposing party, despite its best efforts, has not performed and clearly appears unable to perform is demonstrated in *Resolution Trust Corporation v. York*, No. C-960180, 1997 WL 78591 (Ohio Ct. App. Feb. 26, 1997). In *York*, the court affirmed a money judgment in favor of a real estate purchaser who did not tender the purchase price when the

- 26 -

seller could not deliver an unencumbered title. Notably, the seller had attempted for a year to clear title; despite these efforts, the court found the buyer's failure to tender excusable.

In like fashion, American Greetings' efforts to secure transfer of Cookie Jar's rights do not insulate it from a breach claim. Under Ohio law, it makes no difference how strenuously a contracting party attempts to discharge its obligations. If it is reasonably clear that the contracting party will not be able to do so, the opposing party need not tender performance to maintain an action for breach. MoonScoop did not have to engage in the costly and "useless ceremony" of assembling $95 million when it was reasonably clear that American Greetings could not perform.

The partial dissent finds *Gebbie* and *York* inapposite because, in those cases, the existence of liens made the inability of performance beyond question. But the liens in those cases do not appear to have been conceptually different from Cookie Jar's claims that clouded the properties in our case. In *Gebbie*, the title was clouded by servitudes in favor of neighboring properties, such as set-back requirements, which while perhaps exceedingly difficult to remove as a practical matter, were at least theoretically removable. The same is true of the liens in *York*, consisting of significant tax liens, which theoretically could have been paid off. While the inability to perform in those cases may well have been fairly clear-cut, those cases teach only that the inability to perform must be judged based on the context of a particular case. And here the judgment whether it was reasonably clear that American Greetings could not bring about a conveyance of Cookie Jar's rights should be made by a factfinder after full factual development, not by the court on summary judgment.

The partial dissent further concludes that *Gebbie* and *York* simply establish an avenue of relief that MoonScoop did not pursue, *i.e.*, "stop working on its end of the deal . . . and seek legal

redress." But neither *Gebbie* nor *York* establish any requirement that a party "stop working" towards consummation of a doubtful transaction and immediately sue. I find nothing in Ohio law that would penalize a party for continuing to work to salvage a transaction, in the face of apparently impossible odds. Perhaps that is evidence that a jury might weigh in considering whether it was reasonably clear that American Greetings could not perform, but it is not dispositive evidence that mandates an award of summary judgment against MoonScoop. Indeed, a holding such as the one proposed by the partial dissent would be counterproductive by incentivizing a party to resist or avoid efforts at salvaging troubled transactions.

Alternatively, the partial dissent invokes the doctrine of waiver to conclude that MoonScoop waived its right to insist on transfer of the properties free and clear of Cookie Jar's rights by the end of the closing period specified in the contract. I find three problems with this approach. First, the parties did not raise or brief the issue of wavier on appeal, nor did the district court address the issue in its ruling. In such circumstances, it would not be prudent for this Court to pass on this issue. *See Wright v Holbrook*, 794 F.2d 1152, 1157 (6th Cir. 1986) ("[T]he general rule is that this court will not consider issues not raised in the district court."); *Hanson v. City of Fairview Park, Ohio*, 349 F. App'x 70, 74-75 (6th Cir. 2009) (rejecting dissent's argument because it would be unfair to the parties to consider an issue that was not addressed by the district court or raised or briefed on appeal).

Second, under Ohio law, "[t]he party asserting the defense of waiver bears the burden of proving [it]." *Kool, Mann, Coffey & Co. v. Castellini Co.*, No. C-930951, 1995 WL 453049, at *6 (Ohio Ct. App. Aug. 2, 1995) (citing *White Co. v. Canton Transp. Co.*, 2 N.E.2d 501, 505 (Ohio

1936)). Given that American Greetings did not even invoke the defense in its summary judgment motion, it clearly has not satisfied this burden.

Finally, waiver is typically a fact-intensive issue requiring a determination by the factfinder. *See EAC Props., L.L.C. v Brightwell*, No. 10AP-853, 2011 WL 1944101, at *5 (Ohio Ct. App. May 17, 2011) ("Whether a party's inconsistent conduct amounts to waiver involves a factual determination within the province of the trier of fact.").[3] The evidence of waiver to which the partial dissent points is that MoonScoop was open to considering an alternative transaction. But showing a willingness to consider an alternative arrangement hardly amounts to an "unequivocal, decisive act" sufficient to establish waiver of a contractual right. *See White Co.*, 2 N.E.2d at 505 (party asserting waiver must prove, "by the greater weight of the evidence, . . . a clear, unequivocal, decisive act of the party against whom the waiver was asserted, showing such a purpose or acts amounting to an estoppel on the latter's part").[4] If it were, parties to a troubled transaction would be put to a Hobson's choice of inflexibly insisting on their contract rights or risk waiving their contract rights if workout efforts to save some portion of a deal fail. Nothing in Ohio law would

---

[3] To be sure, where facts and their inferences are undisputable, summary judgment may be appropriate. *See, e.g.*, *Northwoods Condo. Owners' Ass'n v Arnold*, 770 N.E.2d 627, 630 (Ohio Ct. App. 2002) (condo owner waived right to challenge illegal adoption of pet restriction because it was undisputed that he purchased condo with knowledge of the restriction). Such is not the case here.

[4] Cases from outside Ohio establish emphatically that simply considering alternative workout arrangements does not amount to waiver. *See, e.g.*, *Fed. Home Loan Mortg. Corp. v. 141st St. & Broadway Realty Co.*, No. 92-CIV-1433, 1994 WL 9686, at *4 (S.D.N.Y Jan. 7, 1994) ("Mere willingness to consider a workout proposal, however, does not constitute waiver."); *Ash Park, LLC v. Alexander & Bishop, Ltd.*, 767 N.W.2d 614, 621 (Wis. Ct. App. 2009) ("Ash Park's mere willingness to consider a new deal prior to the scheduled closing did not constitute waiver of the time of the essence provision.").

mandate the forfeiture of a breach claim simply because a party showed a willingness to consider an alternative transaction. Again, that evidence may be pertinent for a factfinder's consideration on the issue of waiver, but it can hardly be dispositive as a matter of law.

I believe the lead opinion's ultimate conclusion to allow MoonScoop's breach of contract claim to proceed is correct, because there is no rigid requirement under Ohio law that a contracting party expressly or "unequivocally refuse" to perform in order to excuse the opposing party's formal tender of performance. A contracting party's reasonably clear inability to perform will also excuse tender by the opposing party where the opposing party is ready, willing, and able to perform. And here there is, at the very least, a factual question regarding American Greetings' ability to effectuate transfer of Cookie Jar's rights, assuming the "drag along" provision did not accomplish that automatically. Nor can the lower court's judgment be sustained on a theory of waiver – an issue not argued here or below – especially in light of the factually supportable position that MoonScoop was entitled to explore a possible alternative transaction without forfeiture, as a matter of law, of its contractual rights.

For all of these reasons, I concur in the lead opinion's conclusion reversing in part and affirming in part the district court's judgment and remanding the case for further proceedings.